

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DOMINION DEALER SOLUTIONS, LLC,

     Plaintiff,

v.                                    Civil Action No. 3:13CV699

MICHELLE K. LEE, Deputy
Under Secretary of Commerce
for Intellectual Property and
Deputy Director of the USPTO,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Defendant Lee's MOTION TO DISMISS (Docket Nos. 7-8). For the reasons set forth below, the Motion will be granted.

## BACKGROUND

Dominion Dealer Solutions ("Dominion") instituted this action against the Acting Director of the United States Patent and Trademark Office ("USPTO") as an appeal of five USPTO decisions to deny inter partes review ("IPR") of five contested patents that are the subject of litigation in the United States District Court for the Central District of California. Pursuant to Fed.R.Civ.P. 25(d), the Deputy Director of the USPTO, Michelle K. Lee, was substituted as the named defendant in this action. (Docket No. 29).

On October 1, 2012, Dominion was sued in the Central District of California for allegedly infringing upon four patents held by AutoAlert, Inc. ("AutoAlert"). On April 23, 2013, AutoAlert amended its complaint to alllege that a fifth patent had been infringed. Dominion then sought IPR of those five patents pursuant to 35 U.S.C. § 311(b), which permits a third party to "request to cancel as unpatentable 1 or more claims of a patent on a ground that could be raised under [35 U.S.C.] section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."

Dominion filed with the USPTO five separate petitions for IPR on March 28, 2013, and filed a motion to stay patent infringement proceedings in the Central District of California. As part of each petition for review, Dominion submitted an Expert Declaration of Ward A. Hanson, Ph.D., which offered factual testimony regarding three instances of prior art. This prior art purportedly taught all of the elements of the claims of the AutoAlert patents or rendered the claimed inventions obvious. On May 22, 2013, the trial court in California entered an order granting a stay "pending final exhaustion of all pending IPR proceedings, including any appeals."

During the period August 12-15, 2013, the USPTO's Patent Trial and Appeal Board ("PTAB") issued a series of decisions denying all five petitions for review. Dominion filed a Request

for Rehearing on all five petitions, which were each denied by the PTAB on October 10, 2013.

Dominion then filed this action alleging that the PTAB's decisions were arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of 5 U.S.C. § 706(2)(A), and in excess of statutory authority, in violation of 5 U.S.C. § 706(2)(C). The USPTO filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim. Docket Nos. 7, 8. The parties have fully briefed the motions and are awaiting oral argument.

## DISCUSSION

Fed.R.Civ.P. 12(b)(1) enables a party to move for dismissal by challenging the Court's jurisdiction over a subject matter. Fed.R.Civ.P. 12(b)(1). In the absence of subject matter jurisdiction, the action must be dismissed. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006). A plaintiff bears the burden to prove that federal subject matter jurisdiction exists. Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012).

There are two ways to challenge subject matter jurisdiction. First, the defendant may assert a facial challenge to jurisdiction by arguing that the complaint does not allege facts that permit the exercise of federal subject matter jurisdiction. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). In a challenge of that sort, a court must assume that all of the plaintiff's

alleged facts are true. Id. Alternatively, a defendant may contend that a complaint's assertion of subject matter jurisdiction is not true. Id. (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In a challenge of that sort, a court may consider evidence outside the pleadings in order to determine whether subject matter jurisdiction exists. Id. Accordingly, the plaintiff's allegations will not receive a blanket presumption of truth, and a dispute of material fact will not prevent a court from evaluating the claims underlying jurisdiction. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d at 347 (4th Cir. 2009). The challenge here is of the first sort.

The resolution of the motion is principally a matter of interpreting two statutes. The relevant provisions are set forth below.

35 U.S.C. § 314, which was enacted as part of the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) (hereinafter "AIA"), governs the institution of inter partes review by the USPTO. Subsection (a) states that an inter partes review may not be instituted unless the Director of the USPTO determines that the information presented in a petition shows that "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." Subsection (d) states that, "The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."

4

In this action, Dominion has invoked the provisions of the APA, which, of course, "is not a jurisdiction-conferring statute." Lee v. U.S. Citizenship and Immigration Services, 592 F.3d 612, 619 (4th Cir. 2010) (quoting Trudeau v. FTC, 456 F.3d 178, 183 (D.C. Cir. 2006)). "Rather the jurisdictional source for an action under the APA is the 'federal question' statute, which . . . 'confer[s] jurisdiction on federal courts to review agency action.'" Id. (quoting Califano v. Sanders, 430 U.S. 99, 105 (1977)).

The Supreme Court of the United States has recognized that the "APA confers a general cause of action" to obtain judicial review of agency action through the mechanism of 5 U.S.C. § 702. See also Block v. Community Nutrition Institute, 467 U.S. 340, 345 (1984). But "[t]he APA sets forth several limitations on the grant of judicial review set out in § 702," Pregis Corp. v. Kappos, 700 F.3d 1348, 1356 (Fed. Cir. 2012). These limitations have the potential to effectively strip the federal courts of jurisdiction and provide valid grounds for a Rule 12(b)(1) motion. See Wade v. Blue, 36 F.3d 407, 411 n.2 (4th Cir. 2004)("[A] specific limitation of federal court jurisdiction . . . overrides the general grant of federal jurisdiction in [the federal question statute].")

5 U.S.C. § 701(a)(1) forecloses APA review to the extent that other "statutes preclude judicial review." 5 U.S.C. § 701(a)(1);

see Block, 467 U.S. at 345. The USPTO's chief argument is that 35 U.S.C. § 314(d) is just such a statute, and that it applies to the specific agency decision that Dominion seeks to challenge. The essential question for jurisdictional purposes, then, is if Section 314(d) precludes judicial review of USPTO decisions "whether to institute" IPR proceedings.

"Whether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block, 467 U.S. at 345-46 (citations omitted). "There is a 'strong presumption' that Congress did not intend to prohibit all judicial review of a type of agency action." Pregis Corp. v. Kappos, 700 F.3d 1348, 1358 (Fed. Cir. 2012) (quoting Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 672 (1986)). But this presumption is rebutted "whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" Block, 467 U.S. at 351 (quoting Ass'n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 157 (1970)).

The presumption of judicial review of administrative action "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." Block, 467 U.S. at 349 (citations omitted). The presumption may

6

also be rebutted by "inferences of intent drawn from the statutory scheme as a whole." Id. Courts are also permitted to consider congressional acquiescence to an initial judicial construction that bars review, as well as the general legislative and judicial history behind a particular statute. Id.

The inquiry into Congressional intent and the meaning of a statute begins with the plain text of the statute: "The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable." 35 U.S.C. § 314(d). That wording is quite clear. Nonetheless, Dominion has fashioned three arguments in an effort to explain why the text of the statute does not expressly preclude this action. Each argument will be addressed in turn.

First, the Plaintiff argues that "§ 314(d) only precludes direct appeals to the Federal Circuit, not APA review in a district court." Opp. at 8. At its core, this argument proceeds from the proposition that this claim under the APA is not an "appeal" of an agency decision.

The most immediate deficiency in this argument is that Dominion has previously represented, to both this Court and the United States District Court of the Central District of California, that this action is in fact an appeal of USPTO decisions. As the USPTO has noted, see Reply at 4, the header in the Complaint declares that filing to be an **"APPEAL FROM THE**

7

**USPTO."** Complaint at 1 (emphasis in original). The very first sentence of the Complaint states that Dominion "hereby files its Complaint . . . appealing the United States Patent and Trademark Office's ('PTO') Decisions not to grant a series of <u>inter partes</u> review Petitions. . ." <u>Id.</u>

Dominion has made similar representations to the California district court in Dominion's suit against AutoAlert, persuading the district court to issue an order that stayed infringement proceedings between Dominion and AutoAlert pending "final exhaustion of all IPR proceedings, including any appeals." Docket No. 30, Ex. H, at 1. After the PTAB denied Dominion's petitions for review, AutoAlert filed a motion to lift the stay. Dominion opposed that motion on the ground that the action in this Court is "an Eastern District of Virginia appeal action under the Administrative Procedure Act." <u>Id.</u> In fact, one section of Dominion's argument to the California district court is almost word-for-word the same argument that the UPSTO presented in its initial memorandum to this Court. <u>Compare</u> Mem. at 15-16 <u>with</u> Docket No. 30, Ex. H, at 5-6.

In light of the foregoing, it is clear that Dominion made the tactical decision to present its Complaint as an "appeal" so as to avoid triggering the end of the California's district court's stay order. This Court will not permit Dominion to perform a volte-face now that the cost of that decision has become apparent.

But, even if Dominion had not conceded the issue through its representations in this Court and in the California court, there is no reason to conclude that this action is not an "appeal" of the USPTO decision. Indeed, several Courts of Appeals have characterized APA challenges brought in the district courts as "appeals." Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009); Maxey v. Kadrovach, 890 F.2d 73, 77 (8th Cir. 1999); Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1580 (10th Cir. 1994); Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Judges within this District have also adopted the same view in APA challenges involving specific patent statutes that include the "nonappealable" language. See Versata Development Corp. v. Rea, Case No. 1:13-cv-328, 2013 WL 4014649, at *7 (E.D. Va. Aug 7, 2013); Callaway Golf Co. v. Kappos, 802 F. Supp. 2d 678, 685 (E.D. Va. 2011); Heinl v. Godici, 143 F. Supp. 2d 593, 596-97 (E.D. Va. 2001). Dominion's response to those cases is that other references to "appeals" within the patent statutes specifically identify the Federal Circuit Court of Appeals as the proper forum. See Opp. at 9. But that observation does not support the inference that isolated references to "appeals" in the patent statutes must refer only to actions in the Federal Circuit, and that "nonappealable" presents a bar only to immediate review by the Federal Circuit.

Dominion's second argument is that, even if Section 314(d) precludes an appeal to the district court of the PTAB's substantive determinations, it does not preclude an appeal of PTAB's construction of the relevant legal standards. Opp. at 11-13. This argument is based on two decisions, neither of which permit the result urged by Dominion.

In Lindahl v. Office of Personnel Management, 470 U.S. 768 (1985), Lindahl sought judicial review of certain alleged errors of law and procedure committed by the Merit Systems Protections Board ("MSPB") when reviewing his disability claim. The relevant civil service laws stated that decisions about "questions of dependency and disability . . . are final and conclusive and are not subject to review." 5 U.S.C. § 8347(c). The Federal Circuit, sitting en banc, dismissed Lindahl's appeal, but the Supreme Court reversed, 470 U.S. at 777-778. Dicta in an earlier case, Scroggins v. U.S., 397 F.2d 295 (Ct. Cl. 1968), cert. denied, 393 U.S. 952 (1968), had given rise to a number of cases interpreting § 8347(c) as permitting review of the MSPB's rulings of law and procedure. See Lindahl, 470 U.S. at 780-81 & n.14 (describing the "Scroggins doctrine" and relevant case law). 5 U.S.C. § 8347(c) was amended in 1980, and after a thorough review of the legislative history the Supreme Court concluded that Congress had implicitly approved and incorporated the Scroggins doctrine into the statutory scheme. Id. at 780-91. This post hoc legislative adoption of a previous

10

judicial doctrine was the main reason that the Supreme Court ruled that the presumption of judicial review had not been overcome.

Dominion argues that Lindahl compels this court to permit review of the legal standards used by the USPTO in deciding whether to grant IPR. Opp. at 11-12. But the Lindahl statute is unlike Section 314(d). First, the Lindahl statute was directed towards the initial determinations of the Office of Personnel Management ("OPM"), but Lindahl was seeking to challenge the legal standards applied by the MSPB, which was charged with reviewing those initial determinations. This additional layer of agency review diluted the force of the statutory preclusion. See Lindahl, 470 U.S. at 779 ("Section 8347(c) speaks of the preclusive effect of OPM determinations, but says nothing one way or the other about the finality of MSPB judgments.") By contrast, in this action the PTAB is both the direct beneficiary of Section 314(d)'s preclusion and the target of Dominion's complaint. See 35 U.S.C. § 6(b)(4) (listing inter partes reviews as one of the duties of the PTAB).

Perhaps more importantly, whereas the statutory preclusion in Lindahl was directed specifically at factual questions of disability and dependency, Section 314(d) applies to the entirety of the IPR decision. In Rodrigue v. United States, 968 F.2d 1430 (1st Cir. 1992), the First Circuit distinguished another statute on precisely these grounds. The First Circuit observed that Lindahl "found a lack in that the phrase 'concerning those matters

11

are final' referred to '[q]uestions of dependency and disability',
which were questions of fact, so that there was no provision
precluding review of questions of law." Id. at 1433 (quoting 470
U.S. at 779). The Circuit court then noted that "[i]n our case
[the relevant statute] refers to 'settlement,' the ultimate
decision." Id. (quoting Lindahl's comment about the distinction
between the OPM and MSPB).

Lindahl can also be distinguished by the presence of previous
rulings which had preserved the right to judicial review of legal
and procedural errors (the "Scroggins doctrine"), together with
subsequent legislative history signaling Congressional approval of
that doctrine. See Lindahl, 470 U.S. at 780-91. Where such support
in the legislative history is absent, at least one Circuit Court
has found that Lindahl does not apply. See Rhodes v. U.S., 760
F.2d 1180, 1184-85 (11th Cir. 1985)(interpreting the preclusion
provisions of 35 U.S.C. § 715). The AIA is a young statute, and
Congress has not yet taken the opportunity to signal its approval
or disapproval of any judicial gloss on the IPR revisions. But the
legislative history for the AIA itself does not indicate a
statutory scheme that would disfavor preclusion; if anything, the
legislative history offers mild support to the notion that a
decision to deny IPR is precluded from judicial review.

In this action, the USPTO argues, and Dominion appears to
accept, that Congress intended the AIA and the IPR process to

12

decrease the volume of patent litigation in the federal courts and streamline the patent administration process. See H.R. RPT. 112-98, at 45 (2011) (observing that the previous reexamination process was created "in the expectation that it would serve as an effective and efficient alternative to often costly and protracted district court litigation . . . [but] [t]he initial reexamination statute had several limitations that later proved to make it a less viable alternative to litigation for evaluating patent validity than Congress intended.") To be sure, a single APA review of a decision to deny IPR would consume less time and judicial resources than a full trial involving the question of patent validity.[1] But the sheer number of reviews sought by disappointed petitioners might well undermine the Congressional purpose for its modifications to the review process. It is entirely logical, then, for Congress to reserve the right of appeal for those petitioners who were able to obtain IPR, and to bar judicial review for those petitioners who were unable to satisfy the comparatively low threshold of "reasonable likelihood" in their petitions. Standing alone, the legislative history and statutory scheme may not be enough to establish a "fairly discernible" Congressional intent to preclude judicial review of legal standards and statutory construction. But the history and scheme certainly do not cut in

---

[1] An observation which underlines the fact that such a review would be an appeal rather than a new trial on the merits.

13

favor of judicial review as they did in <u>Lindahl</u>. And in conjunction with the plain text of a provision that makes no distinction between issues of fact and law, the Court finds the preclusive intent to be "fairly discernible" in the Congressional statute.

The other decision upon which Dominion places principle reliance is <u>Callaway Golf Co. v. Kappos</u>, 802 F. Supp. 2d 678 (E.D. Va. 2011), which interpreted an earlier version of the statutory provisions governing what was then referred to as "<u>inter</u> <u>partes</u> reexamination". <u>See</u> 35 USC § 312 (2010). In that statute, subsection (a) required the Director of the USPTO to "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request." <u>Id</u>. Subsection (c) stated that, "A determination by the Director under subsection (a) shall be final and non-appealable."

In <u>Callaway</u>, the Acushnet Company had previously entered into a settlement agreement that included mandatory procedures for the resolution of any disputes with Callaway relating to certain patents. Acushnet then filed a request for <u>inter</u> <u>partes</u> reexamination in violation of that settlement agreement. The USPTO proceeded with the reexaminations and decided that certain patents held by Callaway were invalid. When the USPTO denied Callaway's petition to vacate the reexaminations, Callaway sued the USPTO, alleging that the failure to vacate, suspend, or stay the

reexaminations was arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of 5 U.S.C. § 706(2). Callaway, 802 F. Supp. 2d at 681-84.

The Callaway Court ruled that, notwithstanding the language of Section 312(c), it had jurisdiction to hear the claim, reasoning that, "Callaway's challenge does not address whether Acushnet's reexamination applications raised a substantial new question of patentability," and therefore did not address Section 312(a). As a result, Section 312(c)'s bar on appeals did not apply.[2] 802 F. Supp. 2d at 685.

Despite Dominion's effort to minimize the differences between the statutory language in Callaway and the current 35 U.S.C. § 314(d), see Opp. at 13, both the language and the legislative history of the current statute have changed in significant ways. First, the bar on appeals has been broadened to encompass the entirety of the preliminary decision, whereas the previous bar was confined to a factual determination under a specific subsection. Compare 35 U.S.C. § 314(d) with 35 USC § 312 (2010). Second, the Callaway statute predates the AIA's major overhaul of the U.S. patent system and the legislative history that was created in conjunction with that Act. See H.R. RPT. 112-98, at 45 (2011).

---

[2] Significantly, Callaway did not cast any doubt on the notion that Callaway's action was an "appeal" of the USPTO's decisions.

15

Even if the Court were to accept the proposition that the statutory language in Callaway is indistinguishable from the language at issue in this action, Dominion is attempting, in this action, to mount a very different sort of challenge. In Callaway, the appeal of the USPTO's decision was based on an issue entirely collateral to the legal determination delegated to the UPSTO by law and shielded from appellate review. By contrast, this appeal is a direct challenge to the PTAB's legal determination and application of the standards set forth in the statute, a challenge that addresses the merits of the PTAB's decision in a way that Callaway did not.

Finally, Dominion has also suggested that the language of Section 314(d) is only applicable to decisions to grant inter partes review and is inapplicable to decisions denying inter partes review. See Opp. at 13-14. This position is clearly untenable, as the plain language of the statute, "the determination . . . whether to institute an inter partes review," must necessarily encompass both potential determinations. See Webster's Third Int'l Dictionary 2603 (1961) (defining "whether" to mean "an indirect question involving alternatives").

16

## CONCLUSION

For the forgoing reasons, the Defendant's MOTION TO DISMISS will be GRANTED.[3]

It is so ORDERED.

                                          /s/        REP
_____

                    Robert E. Payne
                    Senior United States District Judge


Richmond, Virginia
Date:  April 18, 2014

---

[3] The USPTO's MOTION TO DISMISS also sought dismissal of the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Because the Court lacks subject matter jurisdiction, it may not address that issue.